IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, a Pennsylvania corporation, | ) ) ) | Civ. No. 17-00435 SOM/KSC |
| Plaintiff, | ) ) ) ) | ORDER GRANTING PLAINTIFF PHILADELPHIA INDEMNITY INSURANCE COMPANY'S MOTION TO DISMISS DEFENDANTS OHANA |
| vs. | ) ) ) | CONTROL SYSTEMS, INC., AMIR BOROCHOV, AND LINDA KINJO'S |
| OHANA CONTROL SYSTEMS, INC., a Hawaii corporation; AMIR BOROCHOV; and LINDA KINJO, Defendants. | ) ) ) ) ) ) | COUNTERCLAIM |

**ORDER GRANTING PLAINTIFF PHILADELPHIA INDEMNITY
INSURANCE COMPANY'S MOTION TO DISMISS DEFENDANTS OHANA CONTROL
SYSTEMS, INC., AMIR BOROCHOV, AND LINDA KINJO'S COUNTERCLAIM**

I.        INTRODUCTION.

        Defendant Ohana Control Systems, Inc., contracted with

the State of Hawaii Department of Education ("DOE" or "State")

to install fire safety equipment in four public schools.  To

protect against Ohana's possible failure to complete the work,

the State required Ohana to obtain construction performance

bonds.  Plaintiff Philadelphia Indemnity Insurance Company

provided the bonds, requiring Ohana and its principals,

Defendants Amir Borochov and Linda Kinjo, to execute a General

Indemnity Agreement.  Under the General Indemnity Agreement,

Ohana, Borochov, and Kinjo agreed to indemnify Philadelphia for

claims made against the bonds and to post collateral in an

amount sufficient to secure any claims made against the bonds.

Philadelphia's Complaint alleges that the State made claims under the construction performance bonds, and that Defendants have breached their obligations under the General Indemnity Agreement. Defendants have filed a Counterclaim, which Philadelphia seeks to dismiss for failure to state a claim upon which relief can be granted. The court grants Philadelphia's motion to dismiss the Counterclaim.

## II.     BACKGROUND.

In 2013, Ohana, a Hawaii corporation, contracted with the DOE to install or upgrade fire safety equipment at four schools on Oahu, Hawaii. *See* ECF No. 16, PageID #s 134, 139, 145, 148 (Counterclaim ¶¶ 11 (Puuhale Elementary School contract), 55 (Mililani Middle School contract), 92 (Benjamin Parker Elementary School contract), and 112 (Dole Middle School contract)). There is no dispute that Hawaii law required Ohana to obtain performance bonds to secure performance of the DOE fire safety equipment contracts. *See* Haw. Rev. Stat. § 103D-324; ECF 19, PageID # 170; ECF No. 27, PageID # 216. Philadelphia, a Pennsylvania corporation, agreed to issue the requisite bonds on behalf of Ohana. ECF No. 16, PageID # 133 (Counterclaim ¶ 9).

Copies of the bonds were attached to the Complaint in this matter. *See* ECF Nos. 1-2 (Puuhale Elementary School Performance Bond), 1-3 (Dole Middle School Performance Bond), 1-

2

4 (Mililani Middle School Performance Bond), and 1-5 (Benjamin Parker Elementary School Performance Bond). The bonds required Philadelphia, in the event of Ohana's default on its obligations under the fire safety equipment contracts, to "remedy the Default, or take over the work to be performed . . . and complete such work, or pay moneys to [the DOE] in satisfaction of [Philadelphia's] performance obligation." ECF No. 1-2, PageID # 34; ECF No. 1-3, PageID # 38; ECF No. 1-4, PageID# 42; ECF No. 1-5, PageID # 46.

In return for Philadelphia's issuance of the performance bonds, Defendants Ohana, Borochov, and Kinjo agreed to indemnify Philadelphia for any claim made on the bonds. *See* ECF 1-1, PageID # 20. The General Indemnity Agreement provided, in relevant part:

> Indemnitors [Ohana Control, Borochov, and Kinjo] agree to indemnify and hold harmless Surety [Philadelphia] from and against any Loss sustained or incurred: (a) by reason of having executed or being requested to execute any and all Bonds; (b) by failure of Indemnitors or Principals to perform or comply with any of the covenants or conditions of this Agreement or any other agreement; and (c) in enforcing any of the covenants or conditions of this Agreement or any other agreement.

*Id*. The General Indemnity Agreement also required Defendants to deposit collateral with Philadelphia in the event DOE made a claim against the performance bonds:

3

> Indemnitors agree to deposit immediately
> upon demand by Surety an amount equal to the
> greater of: (a) the amount of any reserve
> established by Surety in its sole discretion
> to cover any actual or potential liability
> for any Loss or potential Loss for which
> Indemnitors would be obliged to indemnify
> Surety hereunder; or (b) the amount of any
> Loss or potential Loss (including legal,
> professional, consulting and expert fees and
> expenses) in relation to any claim or claims
> or other liabilities asserted against Surety
> as a result of issuing any Bond, as
> determined by the Surety in its sole
> discretion.

*Id.* at PageID # 21.

On August 29, 2017, Philadelphia filed the Complaint in this action, alleging that the DOE had made claims on the performance bonds and that Defendants are therefore liable to Philadelphia under the General Indemnity Agreement. *See* ECF No. 1, PageID #s 3, 10-11. The Complaint further alleges that Defendants have failed to deposit collateral at Philadelphia's request in the amount of $341,724, in violation of the General Indemnity Agreement. *See id.* at PageID # 11.

On October 31, 2017, Defendants filed an Answer and a Counterclaim. *See* ECF 16. The Counterclaim's factual allegations largely pertain to conduct of the DOE, which is not a party to this lawsuit. *See id.* at PageID #s 134-50. According to the Counterclaim, Defendants have filed a lawsuit in Hawaii state court against the DOE and State of Hawaii. *See* ECF No. 16 at PageID # 139.

4

The Counterclaim alleges that the DOE acted improperly by, among other things, falsely alleging that Ohana failed to meet its obligations under the fire safety equipment contracts. *See id.* at PageID #s 137-38 (Counterclaim ¶¶ 36, 50). The Counterclaim further alleges that the DOE is "using" these false allegations "to make a false claim against Ohana's performance bond with Plaintiff Philadelphia Insurance." *Id.* ¶¶ 52, 90, PageID #s 139, 145.

Of the Counterclaim's 124 paragraphs of general factual allegations, only two of them describe conduct by Philadelphia:

> 9. Philadelphia induced Defendants to enter into the surety agreement and general indemnity agreement with Philadelphia with assurances that such documents were simple requirements necessary for Defendants to move forward with their construction contracts with the Department of Education (DOE), State of Hawaii.
>
> 10. Philadelphia's misrepresentations regarding the nature and meaning of the general indemnity agreement and surety agreement induced Defendants to enter into the agreements based on the promises of the potential for successful business.

*Id.*, PageID #s 133-34. On the basis of these allegations, the Counterclaim asserts eight claims against Philadelphia: Count I (Complete or *Pro Tanto* Discharge), Count II (Breach of Contract), Count III (Breach of Implied Covenant of Good Faith

and Fair Dealing), Count IV (Misrepresentation), Count V (Unjust Enrichment), Count VI (Breach of Duty to Investigate and Defend), Count VII (Declaratory Relief), and Count VIII (Punitive Damages). *See id.* at PageID #s 150-55.

**III.    Rule 12(b)(6) Standard.**

Philadelphia moves to dismiss the Counterclaim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a Rule 12(b)(6) motion to dismiss, the factual allegations in a counterclaim "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations . . . are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). The court takes all allegations of material fact as true and construes them in the light most favorable to the nonmoving party, and then evaluates whether the counterclaim "state[s] a

6

claim to relief that is plausible on its face." *Twombly*, 550
U.S. at 570; *Sprewell v. Golden State Warriors*, 266 F.3d 979,
988 (9th Cir. 2001); *Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926
(9th Cir. 1996). "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." *Iqbal*, 556 U.S. at 678. Conclusory
allegations of law, unwarranted deductions of fact, and
unreasonable inferences are insufficient to defeat a motion to
dismiss. *Sprewell*, 266 F.3d at 988; *Syntex Corp. Sec. Litig.*,
95 F.3d at 926.

On a Rule 12(b)(6) motion, the court's review is
generally limited to the contents of the counterclaim.
*Sprewell*, 266 F.3d at 988; *Campanelli v. Bockrath*, 100 F.3d
1476, 1479 (9th Cir. 1996). If matters outside the pleadings are
considered, the Rule 12(b)(6) motion is treated as one for
summary judgment. *See Keams v. Tempe Tech. Inst., Inc.*, 110
F.3d 44, 46 (9th Cir. 1997); *Anderson v. Angelone*, 86 F.3d 932,
934 (9th Cir. 1996). The court may "consider certain materials--
documents attached to the [counterclaim], documents incorporated
by reference in the [counterclaim], or matters of judicial
notice--without converting the motion to dismiss into a motion
for summary judgment." *United States v. Ritchie*, 342 F.3d 903,
908 (9th Cir. 2003). This court here ignores the declaration and

other evidence submitted with the Opposition and focuses instead on whether the allegations within the four corners of the Counterclaim adequately state claims.

## IV.        DEFENDANTS' CLAIMS ARE DISMISSED.

Philadelphia argues that all counts fail to state a claim upon which relief can be granted.  ECF No. 18.  This court agrees and grants the motion to dismiss.

### A.    Count I (Complete or *Pro Tanto* Discharge).

Count I of the Counterclaim asserts that "Philadelphia's acts or omissions have increased the risk of loss of Defendants by decreasing Defendants['] ability to bear the cost of performance."  ECF No. 16 ¶ 126, PageID # 150. Defendants therefore claim that they "have been discharged, completely or *pro tanto*, from their obligations" under the General Indemnity Agreement with Philadelphia.  *Id.* ¶ 127.

Philadelphia argues that Count I of the Counterclaim fails to assert a cognizable legal theory.  This court agrees and dismisses the count, which attempts to liken Defendants' obligations under the General Indemnity Agreement to that of a performance bond surety.  Defendants say that a performance bond surety may "avoid enforcement of its [performance] bond obligation on the ground that the obligee (the beneficiary of the bond) ha[s] taken improper actions which prejudice[] the surety by increasing its financial risk."  *Lumbermens Mut. Cas.*

*Co. v. United States*, 654 F.3d 1305, 1313 (Fed. Cir. 2011).

Under this "defense of impairment of suretyship/*pro tanto*

discharge," "[i]f a surety concludes that the government has

improperly impaired its collateral, the surety has the right to

withhold payment on the bond, to the extent the surety has been

prejudiced." *Id.* at 1317. Defendants, however, are not

sureties, and therefore cannot rely on this concept.

Another judge in this district has already rejected an

identical claim in *Liberty Mutual Insurance Company v. Sumo-Nan*

*LLC*, 2015 WL 4093337 (D. Haw. July 6, 2015) (Watson, J.). In

that case, Liberty Mutual issued a performance bond in

connection with a construction project at Tripler Army Medical

Center. The defendant contractors had executed a general

agreement of indemnity in favor of Liberty Mutual in which they

agreed to indemnify Liberty Mutual for losses arising out of the

Defendant contractors' failure to meet their construction

obligations at Tripler Army Medical Center. When a claim was

made on the performance bond, Liberty Mutual sued Defendant

contractors, demanding that they deposit cash or other

collateral as required by the indemnity agreement to secure

amounts claimed under the performance bond. *Id.* at *1.

The defendant contractors in *Liberty Mutual* filed a

counterclaim asserting the same "Complete or Pro Tanto

Discharge" claim as is in this case. Defendant contractors'

counterclaim alleged that Liberty Mutual's conduct had increased the risk of loss to Defendant contractors by "decreasing their potential ability . . . to bear the cost of performance." *Id.* at *2. The district court rejected the claim because the defendant contractors were not sureties. *Id.* at *5. Judge Watson explained:

> A surety bond is a three-part relationship, in which the surety becomes liable for the principal's debt or duty to the third party obligee (here, the government). *See Hartford Fire Ins. Co. v. United States*, 108 Fed. Cl. 525, 531 (2012); *United States Sur. Co. v. United States*, 83 Fed. Cl. 306, 310 (2008). Specifically, the legal relationship of suretyship is formed when: "pursuant to contract (the 'secondary obligation'), an obligee has recourse against a person ('the secondary obligor') or that person's property with respect to the obligation (the 'underlying obligation') of another person (the 'principal obligor') to that obligee[.]" Restatement (Third) of Suretyship and Guaranty § 1(1)(a) (1996)). That is, under the bond, the surety is obligated to the obligee if the principal obligor fails to perform.
>
> In this case, the bond was issued by Liberty Mutual as surety or secondary obligor, for [defendant contractor] as principal obligor, with the United States Department of the Army as the obligee. It is clear that Liberty Mutual alone is the surety under the bond.

*Id.* at *4 (alteration in original).

It is equally clear that Philadelphia issued the performance bonds as surety or secondary obligor for Defendants

Ohana Control, Borochov, and Kinjo, with the DOE as the obligee, and that Philadelphia alone is the surety under the bonds. Because Defendants Ohana Control, Borochov, and Kinjo are not sureties, they cannot "as a matter of law . . . claim the rights or defenses of a surety." *See id.* at *5.

Defendants' Memorandum in Opposition does not contest the argument that Count I is legally defective, outside of a heading that declares, "Counts I, IV, V, and VII state Valid Claims for Pro Tanto Discharge, Misrepresentation, Breach of Duty to Investigate, Unjust Enrichment and Punitive Damages." ECF No. 27, PageID # 238. Because Count I fails to assert any possible claim upon which relief can be granted, Count I is dismissed with prejudice. *See Liberty Mut. Ins Co.*, 2015 WL 4093337, at *5 ("[B]ecause the Nan Defendants are not 'co-sureties' with Liberty Mutual, and as a matter of law, cannot claim the rights or defenses of a surety, amendment of this claim would be futile.").

## B. Count II (Breach of Contract).

Count II of the Counterclaim asserts that "Philadelphia is in breach of its Agreement with Defendants" because "Philadelphia has failed to fully and fairly investigate the claims made by the DOE in this matter and initiated this lawsuit against Defendants prematurely in violation of Philadelphia's obligations under the bonds." ECF No. 16 ¶¶ 131-

32, PageID # 151.  The court agrees with Philadelphia that Count II "is merely an 'unadorned' claim" of unlawful harm that lacks "sufficient facts."  ECF No. 19, PageID # 179.

To sufficiently allege a breach of contract claim, a plaintiff must plead "(1) the contract at issue; (2) the parties to the contract; (3) whether [the claimant] performed under the contract [or an offer and ability to perform or a valid excuse for a failure to perform]; (4) the particular provision of the contract allegedly violated by [the other party]; and (5) when and how [that party] allegedly breached the contract." *Illinois Nat'l Ins. Co. v. Nordic PCL Const., Inc*., 870 F. Supp. 2d 1015, 1034–35 (D. Haw. 2012) (quoting *Honold v. Deutsche Bank Nat'l Trust Co.*, 2010 WL 5174383, *3 (D. Haw. Dec. 15, 2010)); *see also* 17A Am. Jur. 2d *Contracts* § 577 (2016) ("A party seeking to recover upon a contract for lack of performance by the other party must establish his or her own performance, or an offer and the ability to perform, or a valid excuse for a failure to perform").

The Counterclaim, however, fails to identify the contract and contractual provision at issue, whether Defendants performed or were excused from performance of their obligations under the contract, and when and how Philadelphia allegedly breached the contract.  Instead, the Counterclaim simply alleges that Philadelphia had a duty to investigate DOE claims made on

12

the performance bonds before bringing suit against Defendants,
without mentioning the basis of any such purported duty.  ECF
No. 16 ¶¶ 131-32, PageID # 151.

The court has examined the performance bonds and the
General Indemnity Agreement and found no provision imposing a
duty to investigate on Philadelphia.  *See* ECF 1-2, PageID # 34;
ECF 1-3, PageID # 38; ECF 1-4, PageID # 42; ECF 1-5, PageID #
46.  Only the definition of "loss" in the General Indemnity
Agreement refers to "investigating," stating that "Loss includes
but is not limited to . . . (ii) all costs and expenses incurred
in connection with investigating, paying or litigating any
claim, and/or enforcing this Agreement, including but not
limited to legal fees and expenses, professional and consulting
fees, technical and expert witness fees and expenses."  ECF 1-1,
PageID # 20.  This definition therefore defines "loss" as
including costs and expenses incurred in connection with
investigating a claim on the performance bond.  It does not,
however, require any such investigation.  In fact, the notion
that Philadelphia had a duty to investigate conflicts with a
separate provision in the General Indemnity Agreement, which
states that Philadelphia's decision to pay a claim on a bond--
and thereby to obligate Defendants to repay Philadelphia--lies
in Philadelphia's "sole discretion":

> Surety shall have the exclusive right, in
> its sole discretion, to decide and determine
> whether any claim, liability, suit or
> judgment made or brought against Surety on
> any Bond shall or shall not be paid,
> compromised, resisted, defended, tried or
> appealed, on the basis of Surety's belief
> that it is or could be liable or because the
> Surety deems it necessary or expedient to do
> so, and Surety's decision thereon shall be
> final and binding upon the Indemnitors.

*Id.* at PageID # 22.

At the hearing on the motion, Defendants indicated that their breach of contract claim was based on the provision in the performance bonds stating, "If the Principal shall promptly and faithfully perform, and fully complete the Contract in strict accordance with the terms of the contract as said Contract may be modified or amended from time to time; then this obligation shall be void; otherwise to remain in full force and effect." *See, e.g.,* ECF No. 1-2, PageID # 34. Defendants claimed at the hearing that Philadelphia breached the General Indemnity Agreement by attempting to assert rights under it after the performance bonds that it secured became void. Even if the Counterclaim could be supplemented by statements of counsel, which it cannot, Defendants fail to state a viable claim.

There is no contractual provision in the General Indemnity Agreement providing for such a cause of action. For example, the General Indemnity Agreement does not say that

Philadelphia will not file a lawsuit seeking indemnification for losses allegedly incurred when Defendants believe that they have complied with their obligations under the underlying construction contracts.  Philadelphia does not breach the General Indemnity Agreement by attempting to assert rights under it.  If Defendants believe that they complied with their obligations under the construction contracts such that the performance bond is now void, that is a defense to Philadelphia's claim under the General Indemnity Agreement that Defendants should indemnify Philadelphia for losses (or post collateral to secure such potential losses).

An analogy highlights Defendants' failure to state a breach of contract claim.  Suppose A agrees to sell B a car for $10,000.  A delivers the car to B, who pays A $10,000.  If B sues A, asserting that the car was defective in some respect, A cannot maintain a counterclaim against B that asserts that the very filing of a suit by B was a breach of contract given A's complete performance under the contract.  B's assertion of rights in court under the contract is not a breach of the contract, as there is no provision in the contract prohibiting B from asserting a claim that A has not fully performed A's obligations under the contract.  Instead, A has a defense of full performance to B's breach of contract claim.

Defendants have plainly failed to satisfy their pleading obligations with respect to a breach of contract claim. *See Iqbal*, 556 U.S. at 678 (explaining that a claimant must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). The court dismisses the breach of contract claim asserted in Count II of the Counterclaim with leave to amend not inconsistent with this order.

### C. Count III (Breach of Implied Covenant of Good Faith and Fair Dealing).

Count III of the Counterclaim alleges that an "implied covenant of good faith and fair dealing exists in the [General Indemnity Agreement] and the Surety Agreement," and asserts that "Philadelphia's wrongful conduct constitutes a breach of the implied covenant of good faith and fair dealing." ECF No. 16, PageID # 151. The court dismisses Count III of the Counterclaim because it fails to sufficiently allege a viable claim, but gives Defendants leave to file an amended claim.

The Counterclaim's factual allegations with respect to Philadelphia's alleged breach of the implied covenant of good faith and fair dealing are wholly speculative and conclusory. The Counterclaim simply asserts that Philadelphia breached the covenant by means of its "wrongful conduct," without providing any additional details. ECF No. 16, PageID # 151. Such spartan

allegations fail to "give fair notice and . . . enable the opposing party to defend itself effectively." *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quotation marks and citation omitted); *see also Cook v. Brewer*, 637 F.3d 1002, 1008 (9th Cir. 2011) (speculative and conclusory allegations insufficient to state a facially plausible claim).

Moreover, it is not at all clear what the legal basis of Count III of the Counterclaim is. Any amended claim should identify the legal basis supporting a claim of a breach of the implied covenant of good faith and fair dealing, as it is not clear what Count III is based on. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"); *see also Twombly*, 550 U.S. at 555 (noting that Rule 8(a)(2) requires a short and plain statement of the claim in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests" (alterations and citation omitted)); *accord Erickson v. Pardus,* 551 U.S. 89, 93 (2007). Defendants' Opposition indicates that, under section 103D-101(b), now section 103D-101(c), of Hawaii Revised Statutes, "All parties involved in the negotiation, performance, or administration of state contracts shall act in good faith." If that is the legal basis for any amended claim, the claim should identify that legal basis in the amended claim to give Philadelphia "fair notice" of the claim. Such a claim,

however, appears distinguishable from a common law claim of breach of the "**implied** covenant of good faith and fair dealing [in every contract] that neither party will do anything that will deprive the other of the benefits of the agreement." *See Best Place v. Penn Am. Ins. Co.*, 82 Haw. 120, 123-24, 920 P.2d 334, 337-38 (1996) (citations omitted) (emphasis added).

The court notes that other cases in this district have characterized claims for breaches of the implied covenant of good faith and fair dealing as bad faith tort claims. *See Ramelb v. Newport Lending Corp.*, 2014 WL 229186, *3 (D. Haw. Jan. 14, 2014); *Tedder v. Deutsche Bank Nat'l Trust Co.*, 863 F. Supp. 2d 1020, 1039 (D. Haw. 2012); *Phillips v. Bank of Am.*, 2011 WL 240813, *5 (D. Haw. Jan. 21, 2011). But "whether a breach of this duty will give rise to a bad faith tort cause of action depends on the duties inherent in a particular type of contract." *Jou v. Nat'l Interstate Ins. Co. of Haw.*, 114 Haw. 122, 129, 157 P.3d 561, 568 (Ct. App. 2007). In *Best Place*, "special characteristics distinguished insurance contracts from other contracts and justified the recognition of a bad faith tort cause of action for the insured in the context of first- and third-party insurance contracts." *Id.* "These special characteristics included '[t]he public interest in insurance contracts, the nature of insurance contracts, and the inequity in bargaining power between the insurer and the policyholder.'"

*Id.* (quoting *Best Place*, 82 Haw. at 131, 920 P.2d at 345).

Thus, Hawaii recognizes a cause of action for a bad faith denial

of insurance benefits.  However, in most circumstances, Hawaii

law does not provide tort damages for a breach of contract, as

the special characteristics discussed in *Best* Place are absent.

*See Francis v. Lee Enterprises, Inc.*, 89 Haw. 234, 244, 971 P.2d

707, 717 (1999).

The Hawaii Supreme Court has yet to decide whether

"Hawai'i will recognize a [bad faith] tort action against a

surety for its bad faith failure to investigate a claim."  *Bd.*

*of Directors of Ass'n of Apartment Owners of Discovery Bay*

*Condo. v. United Pac. Ins. Co.*, 77 Haw. 358, 361, 884 P.2d 1134,

1138 (1994).  But it has noted that a

> Clearly, the surety owes a duty of good
> faith and fair dealing to *both* the principal
> and the obligee on the bond.  If the surety
> pays too quickly to the obligee, it may
> invite liability claims from the principal.
> Conversely, if it refuses to pay anything
> pending an arbitration or judicial
> proceeding to determine its liability on the
> bond, the surety may incur liability to the
> obligee for failing to act promptly on a
> valid claim.

*Id.* (citation omitted).  This court need not decide on the

present motion whether Defendants can assert a viable claim of

bad faith under the sparse facts alleged here.  Instead, the

court allows Defendants to file an amended claim that sets forth

the legal and factual basis or bases of the claim.

### D. Count IV (Misrepresentation).

Count IV of the Counterclaim alleges that Philadelphia made "negligent and/or intentional misrepresentations [to] Defendants" by falsely suggesting that the General Indemnity Agreement and performance bonds "were mere formalities required for Defendants to do business" with the DOE, and by representing that "Defendants were protected from liability similar to insurance." ECF No. 16 ¶¶ 139-141, PageID #s 152-53. Other factual allegations in the Counterclaim add slightly more color to these allegations:

> 9. Philadelphia induced Defendants to enter into the surety agreement and general indemnity agreement with Philadelphia with assurances that such documents were simple requirements necessary for Defendants to move forward with their construction contracts with the Department of Education (DOE), State of Hawaii.

> 10. Philadelphia's misrepresentations regarding the nature and meaning of the general indemnity agreement and surety agreement induced Defendants to enter into the agreements based on the promises of the potential for successful business.

*Id.* at PageID #s 133-34.

Philadelphia seeks dismissal of the misrepresentation claims asserted in Count IV of the Counterclaim, arguing that they are not sufficiently pled. The court agrees with Philadelphia and dismisses Count IV of the Counterclaim.

At the hearing on the present motion, Defendants were asked to identify the statement or statements underlying the claim. Defendants could not identify any such statement and even changed the thrust of the claim from what appeared in the Counterclaim to have been fraud in the inducement to purchase the bonds. Defendants instead said that a state employee had lied about receiving documents and that Philadelphia was aware of the lie. But Defendants did not identify any misrepresentation made by Philadelphia on which Count IV of the Counterclaim could be based. Such a misrepresentation is required for both an intentional and a negligent misrepresentation claim.

The elements of a fraudulent or intentional misrepresentation claim are: "(1) false representations made by the defendant; (2) with knowledge of their falsity (or without knowledge of their truth or falsity); (3) in contemplation of plaintiff's reliance upon them; and (4) plaintiff's detrimental reliance."[1] *Miyashiro v. Roehrig, Roehrig, Wilson & Hara*, 122

---

[1] The Hawaii Supreme Court has referred to intentional misrepresentation as interchangeable with fraudulent misrepresentation. *See Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Dirs. v. Venture 15, Inc.*, 115 Haw. 232, 263, 167 P.3d 225, 256 (2007) ("This court has set forth the following elements constituting intentional or fraudulent misrepresentation"). Fraudulent misrepresentation claims are subject to the heightened pleading requirements of Rule 9(b) of

Haw. 461, 482-82, 228 P.3d 341, 362-63 (Ct. App. 2010); *see also Au v. Republic State Mortg. Co.*, 2013 WL 1339738, at *7 (D. Haw. Mar. 29, 2013).

A negligent misrepresentation claim is "virtually identical" to an intentional misrepresentation claim, "except that the second prong does not require knowledge of the falsity, but rather, the absence of a reasonable ground for believing it to be true."[2] *Boskoff v. Yano,* 57 F. Supp. 2d 994, 1002 (D. Haw. 1998).

Defendants' conclusory allegations and failure to identify an actual misrepresentation render their misrepresentation claim insufficient. Count IV of the Counterclaim is dismissed with leave to amend so long as any amended claim identifies the misrepresentation allegedly made and satisfies the pleading requirements for an intentional and/or negligent misrepresentation claim.

---

the Federal Rules of Civil Procedure. Accordingly, any intentional misrepresentation claim "must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

[2] A claim asserting negligent misrepresentation is not subject to the requirements of Rule 9(b). *See Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1231-32 (D. Haw. 2010) (holding that, because a negligent misrepresentation claim does not require intent, it is not subject to Rule 9(b)).

**E. Count V (Unjust Enrichment).**

Count V of the Counterclaim alleges that Philadelphia has "been unjustly enriched" because it "received the benefit of payment of [ ] premiums in full from Defendants, but failed to fulfill its obligations to Defendants under" the General Indemnity Agreement and the bonds. ECF No. 16 ¶ 144, PageID # 153. The court dismisses Count V of the Counterclaim because it fails to plausibly plead that Philadelphia breached the General Indemnity Agreement or the bonds.

To bring an unjust enrichment claim, a claimant must plausibly plead two elements: "(a) receipt of a benefit without adequate legal basis by Defendants; and (b) unjust retention of that benefit at the expense of Plaintiffs." *Porter v. Hu*, 116 Haw. 42, 53, 169 P.3d 994, 1005 (Ct. App. 2007). Additionally, there must be an "absence of an adequate remedy at law." *Id.* at 55, 169 P.3d at 1007 (quotation marks and citation omitted). It is not clear from the allegations of the Counterclaim why it would be unjust for Philadelphia to keep the bond premiums when Philadelphia is allegedly being asked to satisfy or pay for Ohana's unfulfilled construction obligations. If Defendants are contending that Philadelphia provided a construction performance bond but did not perform its obligations such that keeping the premiums paid would be unjust, Defendants must allege facts supporting such a contention. If, on the other hand, Defendants

are claiming that they satisfied their construction obligations such that the performance bonds became void, Defendants must explain how it would be unjust for Philadelphia to keep the bond premiums. Because they did not so allege facts, Count V of the Counterclaim is dismissed with leave to amend.

### F. Count VI (Breach of Duty to Investigate and Defend).

Count VI of the Counterclaim asserts that "Philadelphia failed to properly and adequately defend and investigate Defendants['] position" that they are not in default on the DOE fire safety equipment contracts, and that Philadelphia is thereby "in violation of its obligations" under the General Indemnity Agreement and bond agreements. ECF No. 16 ¶ 149, PageID # 154. The court dismisses this claim with leave to amend for the same reason that it dismissed Count II. The court is unable to discern from the allegations in the Counterclaim what facts the claim is based on. Instead, it appears that this claim is simply an attempt to restate the breach of contract claim asserted in Count II.

### G. Count VII (Declaratory Relief).

Count VII asserts that "Defendants are entitled to a declaratory judgment that they have been released and discharged, pro tanto, and/or are not Indemnitors under the [General Indemnity Agreement] or other law, and/or are not

obligated to indemnify Philadelphia against any liability, loss, or expense arising under the Bonds or other law." ECF No. 16 ¶ 154, PageID # 155. Defendants' Opposition clarifies that Defendants are seeking declaratory relief under section 632-1(a) of Hawaii Revised Statutes, Hawaii's version of the Declaratory Judgment Act. *See* ECF No. 27, PageID # 236; *Dejetley v. Kaho`ohalahala*, 122 Haw. 251, 268 n.38, 226 P.3d 421, 438 n.38 (2010) (explaining that "the declaratory judgment act . . . subsequently became HRS § 632-1"). That section states:

> In cases of actual controversy, courts of
> record, within the scope of their respective
> jurisdictions, shall have power to make
> binding adjudications of right, whether or
> not consequential relief is, or at the time
> could be, claimed, and no action or
> proceeding shall be open to objection on the
> ground that a judgment or order merely
> declaratory of right is prayed for . . . .
> Controversies involving the interpretation
> of deeds, wills, other instruments of
> writing, statutes, municipal ordinances, and
> other governmental regulations may be so
> determined, and this enumeration does not
> exclude other instances of actual
> antagonistic assertion and denial of right.

Hawaii courts have held that a declaratory judgment action is not appropriate when a party is complaining of past wrongs that can be remedied through an existing cause of action. *See Kaaa v. Waiakea Mill Co.*, 29 Haw. 122, 127 (1926) ("[T]he courts will not entertain jurisdiction under the Declaratory Judgment Act when it appears that the wrongs complained of have

already been committed and that a cause of action already exists
. . . .");  *see also Seattle Audubon Soc'y v. Moseley*, 80 F.3d
1401, 1405 (9th Cir. 1996) ("A declaratory judgment offers a
means by which rights and obligations may be adjudicated in
cases 'brought by any interested party' involving an actual
controversy that has not reached a stage at which either party
may seek a coercive remedy and in cases where a party who could
sue for coercive relief has not yet done so." (internal citation
omitted)).

Defendants cannot obtain a declaratory judgment that
they have no liability under the General Indemnity Agreement
when that issue is already squarely before this court in
Philidelphia's breach of the General Indemnity Agreement claim.
Accordingly, the court dismisses Count VII of the Counterclaim
without leave to amend.

### H.    Count VIII (Punitive Damages).

In *Ross v. Stouffer Hotel Co. (Haw.)*, 76 Haw. 454,
466, 879 P.2d 1037, 1049 (1994), the Hawaii Supreme Court
approved of the statement that "a claim for punitive damages is
not an independent tort, but is purely incidental to a separate
cause of action."  In *Kang v. Harrington*, 59 Haw. 652, 659, 587
P.2d 285, 291 (Haw. 1978), the Hawaii Supreme Court noted that
"[a]n award of punitive damages is purely incidental to the
cause of action."  Hawaii district courts applying Hawaii state

law have therefore dismissed or granted summary judgment with respect to independent claims of punitive damages, noting that punitive damages are a type of remedy incidental to other causes of action. *See Liberty Mut. Ins. Co. v. Sumo–Nan LLC*, 2015 WL 2449480, *6 (D. Haw. May 2, 2015) ("A claim for punitive damages is not an independent tort, but a remedy that is incidental to another cause of action."); *Hale v. Haw. Publ'ns., Inc.*, 468 F. Supp. 2d 1210, 1233 (D. Haw. 2006) (granting motion for summary judgment as to independent claim of punitive damages, but noting that plaintiff could seek punitive damages as remedy for other causes of action).

The court dismisses Defendant's independent claim for punitive damages with prejudice, but Defendants may pray for punitive damages, if appropriate, as part of a remedy for other claims asserted in any Amended Counterclaim.

## V.      CONCLUSION.

Philadelphia's Motion to Dismiss Defendants' Counterclaim is granted. Defendants are given leave to amend their Counterclaim consistent with this order. That is, Defendants may file amended claims of breach of contract, bad faith, misrepresentation, and unjust enrichment.

Any Amended Counterclaim must comply with Rule 8(a) and Rule 9(b) of the Federal Rules of Civil Procedure. Any Amended Counterclaim should clearly identify the claim(s) being

asserted, and the factual basis or bases for each claim.  That
is, any Amended Counterclaim must allege facts demonstrating
what Philadelphia did to harm Defendants with respect to each
claim asserted.  Any Amended Counterclaim must be filed no later
than February 21, 2018.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 30, 2018.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge


Philadelphia Indem. Ins. Co. v. Ohana Control Sys. et al., Civ. No. 17-00435 SOM/KSC;
ORDER GRANTING PLAINTIFF PHILADELPHIA INDEMNITY INSURANCE COMPANY'S MOTION TO DISMISS
DEFENDANTS OHANA CONTROL SYSTEMS, INC., AMIR BOROCHOV, AND LINDA KINJO'S COUNTERCLAIM.