IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | ) ) ) | CIVIL NO. 17-00435-SOM-RT |
| Plaintiff, | ) ) ) | ORDER DENYING DEFENDANTS' MOTION FOR A NEW TRIAL AND DENYING PLAINTIFF'S MOTION |
| vs. | ) ) | FOR PREJUDGMENT INTEREST |
| OHANA CONTROL SYSTEMS, INC., a Hawaii Corporation, AMIR BOROCHOV, and LINDA KINJO, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANTS' MOTION FOR A NEW TRIAL AND DENYING PLAINTIFF'S MOTION FOR PREJUDGMENT INTEREST**

**I.       INTRODUCTION.**

On February 7, 2020, a jury found Defendants Ohana Control Systems, Inc., Amir Borochov, and Linda Kinjo liable on Plaintiff Philadelphia Indemnity Insurance Company's breach of contract claim and found no liability by Philadelphia Indemnity to any Defendant on any counterclaim.  Before the court are two post-verdict motions.  Defendants have moved for a new trial on the ground that they were unfairly prejudiced by the time limits imposed on trial presentations by this court.  Plaintiff, on the other hand, has moved for prejudgment interest.  For the reasons discussed below, this court denies both motions.

**II       BACKGROUND.**

   **A.   Factual Background.**

The facts underlying this case are discussed in detail

in this court's order granting Philadelphia Indemnity's motion
for specific performance.  ECF No. 246.  The court notes the
underlying facts only briefly here.  In 2012, Ohana successfully
bid on several contracts to install fire alarm systems at public
schools for the State of Hawaii.  As a condition of the
contracts, Ohana obtained performance bonds from Philadelphia
Indemnity.  Under the terms of those bonds, if Ohana defaulted on
the fire alarm contracts, the State could require Philadelphia
Indemnity to pay the cost of completing the work.

        In return for providing the bonds that allowed Ohana to
secure the construction contracts, Philadelphia Indemnity,
besides charging a premium, required Defendants to sign a General
Indemnity Agreement.  That agreement allowed Philadelphia
Indemnity to seek indemnification from Defendants if the State
made a claim against Philadelphia Indemnity under the performance
bonds.  Philadelphia Indemnity also retained the right to require
Defendants to post collateral while it investigated any claims
made against the bonds.

        A dispute concerning payment arose between the State
and Ohana, and Ohana stopped work on three of its contracts with
the State.  The State then declared Ohana in default and turned
to Philadelphia Indemnity to complete the work.  On March 27,
2017, in accordance with the parties' agreement, Philadelphia
Indemnity asked Defendants to post collateral to cover its

2

potential losses.  Defendants did not post any collateral, and Philadelphia Indemnity filed this action.

**B.    Procedural Background.**

Count I of Philadelphia Indemnity's complaint (the only count submitted to the jury) alleged that Defendants had breached the General Indemnity Agreement.  ECF No. 1, PageID # 10-12. Defendants filed counterclaims.  ECF No. 37.  Counterclaim I (Breach of Contract), Counterclaim III (Misrepresentation), and Counterclaim VII (Fraud) were submitted to the jury, with Defendants voluntarily dismissing their remaining counterclaims.

Trial was initially set for October 30, 2018.  ECF No. 14.  On October 19, 2018, this court continued the trial to August 13, 2019, because of a conflict with an ongoing criminal trial.  ECF Nos. 99, 121.

A final pretrial conference was held on August 5, 2019. At that conference, Philadelphia Indemnity estimated that it would need four to five days to present its case.  Defendants (all three of whom were at that time represented by the same attorney) estimated that they would need five to seven days.  ECF No. 162.  However, before trial began, another conflict arose, and the trial was once again continued.

The Magistrate Judge held a status conference on August 9, 2019, to set a new trial date.  At that conference, the parties agreed that "this will be a two week trial."  ECF No.

167.  Trial was rescheduled to January 14, 2020.[1]  *Id.*

          The jury was selected on January 14, 2020.  The potential jurors were told that their jury service was expected to conclude by Friday, January 31, 2020.  Eight jurors were selected by noon.  Opening statements were presented by Philadelphia Indemnity and by counsel for Defendants Ohana and Borochov.  At trial, Kinjo had separate counsel, who reserved opening statement for later in the trial.  Philadelphia Indemnity then called its first witness, John Page.

          By the end of January 14, 2020, the trial judge had become concerned about the pace of trial.  The trial judge informed the parties about these concerns before testimony began on January 15, 2020.  The trial judge noted, in particular, that the process of introducing documents appeared unnecessarily protracted.  Considerable time was spent addressing objections to authenticity even though the trial judge understood that there was a stipulation concerning authenticity.  Moreover, during jury selection, a lengthy bench conference had been held concerning

---

[1]  At the time of these estimates, the same attorney, Mark Kawata, represented all three defendants.  Another attorney, Craig Furusho, served as co-counsel for one defendant, Linda Kinjo.  Kawata, however, withdrew as counsel for Kinjo on January 12, 2020, two days before trial was scheduled to begin, leaving Furusho as Kinjo's sole counsel.  *See* ECF Nos. 184, 186, 187.  Because of that change, both Kawata and Furusho were permitted to cross-examine each witness separately, which meant Defendants might have used more time with each witness than might have otherwise been the case.

Defendants' assertion that a juror should be stricken for cause. Typically, a party's injury when a judge declines a request to strike a juror for cause is the need for the party to waste a peremptory challenge to get rid of that juror, instead of being able to use the peremptory challenge against some other juror. However, Defendants suffered no injury from the court's refusal to strike the juror, because they waived one of their allotted peremptory challenges.  The trial judge cited the foregoing examples in expressing concern about the slow pace of the trial and noted that it might impose time limits.

When trial began on January 15, 2020, Page's testimony continued.  He completed his direct examination and was cross-examined, first by counsel for Ohana and Borochov, then by counsel for Kinjo.  Redirect and re-cross examinations followed. Philadelphia Indemnity then called its second trial witness, Frances Ishida.  Ishida's direct examination was completed, and some cross-examination proceeded.

By January 16, 2020, the trial judge's concerns about the pace of trial had grown more acute.  Both parties appeared to the court to be spending considerable time on matters tangential to the case.  Moreover, the process of introducing key documents at the heart of this case (such as the contracts between the parties) continued to be protracted.  Defendants were routinely asking to be allowed to voir dire witnesses about the

authenticity of documents, even when Defendants had expressly stipulated to the authenticity of those documents.  (As it turned out, some of those very documents were essential to Defendants' counterclaims.)  The parties also sometimes raised objections without appearing ready or able to explain them.

The court's concern about the trial schedule was primarily focused on whether the jurors would be able to participate in a trial that went far beyond the estimated time. On the morning of January 16, 2020, this court therefore informed the parties that it intended to impose time limits.  The court noted that, according to the minutes of the status conference held on August 9, 2019, the trial had been estimated to last two weeks.  In the District of Hawaii, district judges usually conduct trials four days a week, reserving the fifth day to handle other matters.  Noting that part of any jury trial required allotting some time to jury selection, opening statements, closing arguments, and jury instructions, the trial judge concluded that a two-week trial would include, at most, seven days of testimony.  This court's experience in numerous past trials was that, at best, testimony could occupy 5.5 hours of a trial day, the remainder of the day being taken up by matters other than testimony (e.g., conferences with counsel and breaks).  The trial judge therefore calculated that, allotting 5.5 hours of testimony for each of seven trial days, the trial

should last no more than 38.5 hours, which the trial judge rounded up to 40 hours, giving each side 20 hours.[2]

All three Defendants objected.  Counsel for Ohana and Borochov indicated that he had anticipated that a two-week trial meant ten trial days, not eight trial days at only four days per week.  Counsel for Kinjo also stated that he believed that he needed more time than the court had provided.  This court invited the parties to file memoranda addressing the issue by the next morning.  In its memorandum, Philadelphia Indemnity stated that it did not object to the court's time limits.  ECF No. 192, PageID # 4289.  Defendants argued that the time limits would not permit them to call all of the witnesses they had anticipated. ECF No. 191, PageID # 4282.  They asked this court for two additional trial days.  ECF 191, PageID # 4283.

At the start of the day on January 17, 2020, before the jury was brought to the courtroom, this court held a hearing concerning the proposed time limits.  Defendants argued that the limits would be unfair to them because most of the trial days would be spent on Philadelphia Indemnity's witnesses.  This court was unpersuaded that Defendants were prejudiced, noting that

---

[2]   When the trial judge issued this order, each side had used three hours of time.  Moreover, the trial judge had warned the parties that it might impose time limits the previous morning.  Thus, the assertion made by Defendants at oral argument that they did not know about the time limits until "40 percent" of trial had finished is simply incorrect.

7

Defendants were in control of the length of their cross-examinations of Philadelphia Indemnity's witnesses and could reserve their time for presentation of their counterclaims.  The court also noted that, if Philadelphia Indemnity used up most of its allotment in presenting its witnesses, it would little opportunity to cross-examine Defendants' witnesses.  That is, both parties had equal reason to hoard their time, and Defendants would only lack time to present their counterclaim case-in-chief if they decided that cross-examining particular witnesses presented by Philadelphia Indemnity was more important.  Notably, the parties' competing claims were, in many respects, mirror-images of each other, so that the defense against an opponent's claim dovetailed with presentation of a party's affirmative case.

Ultimately, however, this court granted the parties an additional day to present evidence, meaning that the court was permitting trial to last 45.5 hours, instead of the earlier 40 hours, and each side was being allotted an additional 2.75 hours, or 22.75 hours per side.  Notably, Defendants couch their calculations in terms of trial days, rather than hours.  There is no way to know that any trial "day" would have indeed consisted of five and a half hours of testimony, which was what this court told the parties was, in the court's experience, the amount of testimony they might obtain in a trial day if they were lucky. The court's experience is that there is actually less testimony

on some trial days.  Thus, for example, when the court first raised the issue of time limits on the morning of January 16, 2020, the court told the parties that the court's own notes showed that each side had conducted examinations for about the same amount of time as the other side.  That prior time covered part of the afternoon of January 14, 2020, trial proceedings on January 15, 2020, and part of the morning of January 16, 2020.  That prior time amounted to about three hours per side, or six hours total.  That means that the trial day of January 15 had likely not involved five and a half hours of testimony, as the sum of the examination on January 14 and the examination on the early morning of January 16 totaled more than half an hour.  In short, it is not at all clear how many hours of testimony Defendants could have had in five trial days.

The court subsequently informed the jurors that the trial might continue into February, and asked if that would be a problem.  Juror 6 responded that, if the trial continued into February, that would conflict with his pre-existing travel plans.  The court then asked the parties if they were certain that they would use the entire 22.75 hours allocated per side.  Both sides indicated that they might finish early.  This court therefore told Juror 6 that he should continue to sit as a juror, although, if the schedule ended up causing a problem, the court would certainly address that.

By January 30, 2020, it had become clear that the case would continue into the dates that Juror 6 was scheduled to travel, and the court excused Juror 6.  This occurred before the evidence had closed, which occurred on February 5, 2020.  On February 7, 2020, the jury returned a verdict.  As to Count I, the jury found that Defendants had breached the General Indemnity Agreement by failing to indemnify Philadelphia Indemnity for the costs incurred in investigating the State of Hawaii's claims against the bonds and by failing to post collateral.  ECF No. 229, PageID # 4664-65.  The jury awarded Philadelphia Indemnity $20,260.93 in damages, the court having reserved for post-trial proceedings the issue of the amount of any collateral to be posted, which the parties agreed was an equitable remedy not subject to jury trial.  *Id.* at 4665.  The jury also found that Philadelphia Indemnity was not liable with respect to any of Defendants' counterclaims.  *Id.* at 4666-68.

## III.      LEGAL STANDARD.

### A.   Motion for a New Trial.

Rule 59(a) of the Federal Rules of Civil Procedure provides that a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Rule 59 does not expressly enumerate the grounds on which a motion for a new trial may be granted.  *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003).

10

Rather, it says only that the court is "bound by those grounds that have been historically recognized." *Id.* Historically recognized grounds for a new trial include a verdict that is against the weight of the evidence, damages that are excessive, or a trial that was not fair to the moving party. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). A court may order a new trial only if, after weighing the evidence, the court concludes that "the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Id.* (quoting *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)).

### B. Prejudgment Interest.

"State law governs prejudgment interest in a diversity action." *Westport Ins. Corp. v. California Cas. Mgmt. Co.*, 916 F.3d 769, 781 (9th Cir. 2019). "Under Hawaii law, the award of prejudgment interest is within the discretion of the court." *Pac. Commercial Servs., LLC v. LVI Envtl. Servs., Inc.*, 2018 WL 3826773, at *33 (D. Haw. Aug. 10, 2018).

## IV.   ANALYSIS.

### A. The Time Limits Imposed by this Court Were Reasonable.

Defendants contend that they are entitled to a new trial because they were unfairly prejudiced by the time limits

imposed by this court.[3]   ECF No. 235, PageID # 5382.   "A district court is generally free to impose reasonable time limits on a trial."   *Amarel v. Connell*, 102 F.3d 1494, 1513 (9th Cir. 1996); *accord Gen. Signal Corp. v. MCI Telecomm. Corp.*, 66 F.3d 1500, 1508 (9th Cir. 1995).   In determining whether time limits are reasonable, a court may exercise discretion.   *Monotype Corp. PLC v. Int'l Typeface Corp.*, 43 F.3d 443, 450 (9th Cir. 1994).

This court established reasonable time limits here. Well before trial began, the parties agreed that trial would last about two weeks.   Defendants may have been initially unaware that trials are usually conducted only four days a week, but certainly they had to have known that at the latest by the time the jury was selected on January 14, 2020, when the prospective jurors were given that information in the presence of the parties and their counsel.   In any event, even if Defendants thought the trial would last 10 trial days, they had that time.   The testimony alone (not including jury selection, opening statements, closing arguments, or jury instructions) ended up being presented in a period that spanned 11 days, as shown by the courtroom manager's daily minutes, included in the case file.

---

[3]   Defendants also argue that they are entitled to a new trial because the jury should have determined the amount of collateral that Defendants were required to post.   ECF No. 244, PageID # 5709-10.   In a separate order granting Philadelphia Indemnity's motion for specific performance, this court has rejected that argument.   ECF 246, PageID # 5754-5757.

Testimony began on the afternoon of January 14, 2020, continued
on January 15, 16, 17, 22, 23, 24, 30, and 31, then resumed on
February 4 and concluded after part of February 5.  *See* ECF Nos.
188 (amended by ECF No. 199), 189, 190, 193, 194, 195, 196
(amended by ECF No. 198), 202, 204, 216, 220).  Testimony alone
thus consumed nine trial days, as well as part of a tenth day and
part of an eleventh day.[4]  The time limit the court set was well
within this court's discretion.  *See, e.g.*, *Gen. Signal Corp.*, 66
F.3d at 1508 (holding that time limits were reasonable when they
were based on the estimates in the parties' joint pretrial
statement); *Monotype Corp.*, 43 F.3d at 451 (affirming the
district court's imposition of time limits when one party
anticipated that it needed three weeks for trial and the court
ultimately limited trial to nine days total).

Defendants nevertheless contend that the time limits
were too rigid and precluded them from introducing important
evidence.  ECF No. 235, PageID # 5382-83.  That argument fails
for two reasons.

First, at trial, Defendants did not point to specific

---

[4] On one day, the court imposed a modified schedule to allow
a juror to keep a doctor's appointment.  On another, the trial
recessed in the middle of the afternoon on one trial day to
accommodate an urgent matter involving the family of counsel for
Ohana and Borochov, so the total number of days used for
testimony may not have been a full 10 trial days, but it was
reasonably close to that, even assuming the only trial days that
should be counted are days on which witness examinations
occurred.

evidence that was essential to their case and yet could not be introduced.  *See Monotype Corp.*, 43 F.3d at 451.  In *Monotype*, for instance, the Ninth Circuit rejected a challenge to the imposition of time limits because the objecting party failed to raise a particularized challenge during trial:

> ITC contends that it had to carry the burden in explaining the background of the typeface industry and the marketing of typefaces.  ITC therefore argues it needed more time to make such a presentation so the jury could understand the case.  *ITC states the time limitation forced it to restrict its presentation and delete the testimony of ITC's Vice President.  ITC did object to the trial limitation, but it did not argue how it was damaged by the time limits*, nor state what additional time was needed.  Monotype asserts ITC had ample opportunity to request additional time, but did not do so.  ITC responds that the judge's comments discouraged the request.  *The better place for ITC to make the time argument, however, was there, not here*.

*Id.* (emphases added).  The rationale underlying the Ninth Circuit's decision in *Monotype* is obvious.  If a party informs the court, during trial, that it needs more time to introduce specific evidence, the trial court has the opportunity to amend the time limits while the jury is still available.  After trial, that option is no longer available.

That reasoning applies here.  Defendants did challenge the imposition of time limits at trial, and they repeated that objection as their time ran down.  But at trial their oral objections lacked particularity.  Even the memorandum that

14

Defendants submitted on this issue during trial lacked sufficient specificity.  The most Defendants said was that they would be forced to limit the number of witnesses.  ECF No. 191, PageID # 4282.  Defendants did not establish that any of the witnesses they could not call was crucial to their case.  To the contrary, even after this court established time limits, Defendants expressed optimism that they would not use all of their time, suggesting that they believed that the relevance of the absent witnesses' testimony would be limited.  In the interest of retaining Juror 6, they assured the court of the possibility that the evidence would close by the end of January.  At no point during trial did Defendants inform the court that the time limits prevented them from calling a specific witness to present evidence not already in the record and crucial to their case. Defendants have provided more details in their motion for a new trial, but, as the Ninth Circuit said in *Monotype*, the time to make that argument was at trial, not now.  *See* 43 F.3d at 451.

        Even now, Defendants' motion for a new trial fails to identify the essential evidence that Defendants believe they could not introduce.  In their motion, Defendants argue that the time limits prevented them from introducing more than 400 exhibits and taking testimony from six additional witnesses.  ECF No. 244, PageID # 5703-5706; *see also* ECF No. 235, PageID # 5379-5381.  Of course, even if trial had lasted another week (well

more than Defendants ever requested), Defendants could not have introduced an additional 400 exhibits at the pace involved for exhibits that did come into evidence.  Nor have Defendants attempted to show that any one of those exhibits is particularly important.  They throw out 400 as a large number, but this in no way proves any point.  At most, it indicates that Defendants had gathered a large number of possible trial exhibits without having taken the time to figure out which of the 400 might really be needed at trial.  That Defendants accumulated hundreds of potential trial exhibits does not prove that they should have been allowed to offer all (or even any) of the 400 exhibits.

Of the six witnesses Defendants said they would have presented, two (Amir Borochov and James Ho) did testify at trial. Defendants say they wanted to elicit further testimony from them, but it is not at all clear that Defendants could not have organized their direct examinations to ensure that all critical information was presented.

Two of the six witnesses (Fu Xiang Wang and Song Lin Zhang) appear to be expert witnesses.  Because Defendants failed to adhere to discovery deadlines, this court precluded the introduction of certain expert testimony in its rulings on motions in limine and at trial.  Defendants have not shown that these two witnesses would have been permitted to testify had time

permitted.[5]

The two remaining witnesses (Dan Colton and Craig Kanai) that Defendants say they would have called appear to have been scheduled to provide testimony about how the construction contracts between Ohana and the State were handled.  Defendants say that Colton, an Ohana employee, would have testified about "the progress of each project, what needed to be completed and his interactions with each project manager."  There was considerable testimony about this subject during trial.  To the extent Defendants wanted to justify their actions in handling the construction contracts and to critique the State's approach to their work, that is a matter that did not require more testimony. Similarly, Kanai's proposed testimony goes more to Ohana's dispute with the State than to Ohana's dispute with Philadelphia Indemnity that is the subject of this case.  Kanai worked for Wasa Electric, the company that ended up working on the fire alarm projects after Ohana, citing a lack of payment by the State, declined to do more work until payment was made.  Ohana contended at trial that the State hired Wasa Electric to do work

---

[5]  At oral argument, Defendants explained that they believed that Wang and Zhang should have been permitted to testify, at least as lay witnesses, because one of Philadelphia Indemnity's witnesses, Craig Colligan, was allowed to testify as a lay witness.  Colligan, who was listed as a witness by both sides, testified in a lay capacity without objection.  Defendants have not identified any testimony from Wang or Zhang that could have qualified as lay testimony.

beyond what Ohana had been hired to do, and that the State then unreasonably sought to recover from Ohana and/or Philadelphia Indemnity the costs of having Wasa Electric do that purportedly extra work.  According to Ohana, Kanai would have testified about the scope of work to be done on the fire alarm systems and "the difference between the work he bid and the original contract work that Ohana bid and contracted for."  This subject was sufficiently covered at trial.  Thus, even at this stage, Defendants do not identify necessary evidence that was somehow missing from the trial.

Second, even assuming Defendants could be said to have been prejudiced by not being able to introduce more exhibits and to present more witnesses, Defendants themselves are responsible for this inability.  *See Gen. Signal Corp.*, 66 F.3d at 1509 (rejecting a challenge to the imposition of time limits because "the lack of time available at the end of this trial was largely the consequence of GSX's mismanagement of its case-in-chief, for which neither MCI nor the court was responsible").  During Defendants' case-in-chief, counsel's lack of preparation caused considerable delays.

The attorneys for Defendants sometimes had trouble locating exhibits, and when they did find them, they were often inadmissible.  Defense counsel's examination of witnesses also slowed the pace of trial.  At one point, in sustaining

18

Philadelphia Indemnity's repeated objections to leading defense questions during Defendants' case-in-chief, this court noted that counsel for Ohana and Borochov appeared to be allergic to non-leading questions.  And on cross-examination, defense counsel frequently covered the same ground over and over again.  The court saw Defendants wasting a good deal of time during trial and concluded that, without time limits, the waste would have been even greater.

In their motion for a new trial, Defendants assert that they needed more time to develop what they now identify as their core contention: that Ohana had not defaulted on any of its underlying contracts with the State.  ECF No. 244, PageID # 5701.  Yet, during trial, Defendants spent a substantial amount of time on an alternate defense that is simply not supported by law: that they were not bound by the General Indemnity Agreement because they had not read it and therefore could not have understood what they were signing.  Borochov and Kinjo testified about this, using time that could have spent more fruitfully.  As this court instructed the jury, "one who assents to a contract is bound by it and cannot complain that he has not read it or did not know what it contained." *Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254, 264, 141 P.3d 427, 437 (2006) (quotation marks omitted); *see also* ECF No. 223, PageID # 4573.  Defendants chose how to spend their allotted time, and they may not now lay their

choice at this court's feet.

Defendants complain that they had only one and a half days for their case-in-chief because of the time limits.  ECF No. 235, PageID # 5383.  As this court explained to Defendants at trial, they could either choose to use their time cross-examining Philadelphia Indemnity's witnesses or reserve their time for their own case-in-chief.  When Defendants chose to use their time on cross-examination, they knew full well that the time for their counterclaims would be limited.

Under these circumstances, granting Defendants' motion for a new trial would be unfair to Philadelphia Indemnity.  This court imposed time limits on both sides.  Defendants are not entitled to a second bite at the apple because they are unsatisfied with the result of the choices they made the first time around.  *See Gen. Signal Corp.*, 66 F.3d at 1509 ("allocation of additional time to GSX would have been unfair to MCI . . . [because] to grant GSX additional time would reward its inefficient use of time and penalize MCI for managing its time").

### B.   Plaintiffs Are Not Entitled to Prejudgment Interest.

Hawaii law permits an award of prejudgment interest in civil cases.  *See* HRS § 636-16.  The decision to award prejudgment interest rests within the court's discretion.  *See Tri-S Corp. v. W. World Ins. Co.*, 110 Haw. 473, 498, 135 P.3d 82,

107 (2006).  In exercising that discretion, a court must first
consider whether either party is at fault for any delays leading
to the final judgment.  *Id.*  If neither party is at fault, "the
trial court may still award or deny prejudgment interest in its
discretion, depending on the circumstances of the case."  *Id.*
Generally, however, the circumstances only justify an award of
prejudgment interest if "'the issuance of judgment [was] *greatly
delayed.*'"  *Cty. of Hawai`i v. C & J Coupe Family Ltd. P'ship*
(*Coupe I*), 120 Haw. 400, 410, 208 P.3d 713, 723,(2009) (emphasis
in original) (quoting *Tri-S Corp.*, 110 Haw. at 498, 135 P.3d at
107); *see also Cty. of Hawaii v. C & J Coupe Family Ltd. P'ship*
(*Coupe II*), 124 Haw. 281, 312, 242 P.3d 1136, 1167 (2010)("a
trial court can award prejudgment interest for *any substantial
delay* in the proceedings" (emphasis in original) (quotation marks
omitted)).

    Neither party was at fault for the delays in this case.
Trial was continued because of this court's schedule, not because
either party asked for more time.

    Philadelphia Indemnity nevertheless suggests that
Defendants could have avoided delays in the entry of judgment by
posting collateral sooner.  ECF No. 255, PageID # 5810.  Of
course, this very action was Philadelphia Indemnity's attempt to
compel Defendants to post collateral.  Whether Defendants'
refusal to post collateral was wrongful was an issue at trial.  A

failure to accept Philadelphia Indemnity's litigation position
does not make Defendants responsible for delay.  Defendants had a
colorable argument that Philadelphia Indemnity's request for
collateral was overstated, and they were entitled to litigate
that issue.[6]  On the present record, Philadelphia Indemnity has
not shown that Defendants caused the entry of judgment to be so
greatly delayed that prejudgment interest should be awarded.
*Coupe I*, 120 Haw. at 410, 208 P.3d at 723.

        As an initial matter, Philadelphia Indemnity has failed
to establish when the relevant time period begins.  In a breach
of contract case, the earliest date that prejudgment interest can
begin accruing is the date that the contract was breached.  HRS §
636-16.  At trial, Philadelphia Indemnity prevailed on its claim
that Defendants breached the indemnification provisions of the
General Indemnity Agreement.  *See* ECF No. 229, PageID # 4664-65.
Thus, the obvious date for the prejudgment interest period to
begin would be the date on which Philadelphia Indemnity made an
indemnification demand.  However, no such demand date is pointed
to by Philadelphia Indemnity in seeking prejudgment interest.

_____

        [6]  Similarly, Philadelphia Indemnity contends that
Defendants could have aggressively pursued a third-party action
against the State.  ECF No. 255, PageID # 5810.  It is hard to
see a direct line between Defendants' failure to adopt a
particular approach in separate litigation and any alleged delay
in the entry of the judgment in this action.

Philadelphia Indemnity did make a *collateral* demand on March 27, 2017.  Philadelphia Indemnity appears to assume that, because it had the right to use that collateral to indemnify itself for the losses it incurred, *see* ECF No. 231-5, PageID # 4708, the relevant date is the date that Defendants refused to post collateral.  That is not at all clear.  Even if Philadelphia Indemnity had the *right* to use the collateral to indemnify itself on March 27, 2017, there is no evidence that it would have actually done so.  This court therefore cannot determine when Philadelphia Indemnity first suffered an injury.

Even if this court assumes that March 27, 2017 (the date of the collateral demand) or August 29, 2017 (the date that the complaint was filed) is when the relevant time period began, Philadelphia Indemnity does not establish that it is entitled to prejudgment interest.  Judgement was entered on March 31, 2020.  Thus, Philadelphia Indemnity is only entitled to prejudgment interest if a wait of less than three years for the issuance of judgment constitutes a "substantial delay."  *See Coupe II*, 124 Haw. at 312, 242 P.3d at 1167.  This court concludes that, at least on the present record, it does not.  *See, e.g.*, *Weite v. Momohara*, 124 Haw. 236, 266, 240 P.3d 899, 929 (Ct. App. 2010) (affirming order denying request for prejudgment interest despite delay of approximately three years); *Page v. Domino's Pizza, Inc.*, 80 Haw. 204, 210, 908 P.2d 552, 558 (Ct. App. 1995)

(affirming order denying request for prejudgment interest when the judgment "was entered over three-and-a-half years after Page was injured").  Instead, "any delay was the result of the normal course of litigation[.]"  *Gemini Ins. Co. v. Kukui'ula Dev. Co. (Hawaii)*, LLC, 2015 WL 13235849, at *3 (D. Haw. Oct. 9, 2015). Plaintiff is not entitled to prejudgment interest.

**V.        CONCLUSION.**

Defendants' motion for a new trial is denied, and Philadelphia Indemnity's motion for prejudgment interest is also denied.

DATED: Honolulu, Hawaii, April 27, 2020



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Philadelphia Indemnity Insurance Co. v. Ohana Control Sys., Inc.*, Civ. No. 17-00435 SOM-RT; ORDER DENYING DEFENDANTS' MOTION FOR A NEW TRIAL AND DENYING PLAINTIFF'S MOTION FOR PREJUDGMENT INTEREST