```
              IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF HAWAII

PHILADELPHIA INDEMNITY          )   CIVIL NO. 17-00435-SOM-RT
INSURANCE COMPANY,              )
                                )   ORDER DENYING DEFENDANTS'
          Plaintiff,            )   SECOND MOTION FOR A NEW TRIAL
                                )
     vs.                        )
                                )
OHANA CONTROL SYSTEMS, INC.,    )
a Hawaii Corporation, AMIR      )
BOROCHOV, and LINDA KINJO,      )
                                )
          Defendants.           )
_____ )
```

**ORDER DENYING DEFENDANTS' SECOND MOTION FOR A NEW TRIAL**

**I.    INTRODUCTION.**

A jury found that Defendants Ohana Control Systems, Inc., Amir Borochov, and Linda Kinjo had breached a contract with their bonding company, Plaintiff Philadelphia Indemnity Insurance Company by, among other things, failing to respond to Philadelphia Indemnity's request that they post collateral to cover the bonding company's potential exposure on third-party claims against Defendants.  After the jury returned its verdict, Philadelphia Indemnity filed a post-trial motion asking this court to order the equitable remedy of specific performance of Defendants' agreement to post collateral.  This court granted the motion and ordered Defendants to collectively deposit with Philadelphia Indemnity $698,515 in cash as collateral.  ECF No. 246, PageID  # 5767.  Defendants now assert that, because this court did not hold an evidentiary hearing, the proceeding on

Philadelphia Indemnity's request for an equitable remedy was unfair, and they are entitled to a new trial.  This court disagrees.  Defendants have never shown that an evidentiary hearing was necessary.

**II.      BACKGROUND.**

    **A.   Factual Background.**

The facts underlying this case are discussed in detail in this court's order granting Philadelphia Indemnity's motion for specific performance.  ECF No. 246.  The court notes the underlying facts only briefly here.  In 2012, Ohana successfully bid on several contracts to install fire alarm systems at public schools for the State of Hawaii.  As a condition of the contracts, Ohana obtained performance bonds from Philadelphia Indemnity.  Under the terms of those bonds, if Ohana defaulted on the fire alarm contracts, the State could require Philadelphia Indemnity to pay the cost of completing the work.

In return for providing the bonds that allowed Ohana to secure the construction contracts, Philadelphia Indemnity, besides charging a premium, required Defendants to sign a General Indemnity Agreement.  That agreement allowed Philadelphia Indemnity to seek indemnification from Defendants if the State made a claim against Philadelphia Indemnity under the performance bonds.  Philadelphia Indemnity also retained the right to require

Defendants to post collateral while it investigated any claims made against the bonds.

After a dispute concerning payment arose between the State and Ohana, Ohana stopped work on three of its contracts with the State.  The State then declared Ohana in default and turned to Philadelphia Indemnity to complete the work.  On March 27, 2017, in accordance with the parties' agreement, Philadelphia Indemnity asked Defendants to post collateral to cover its potential losses.  Defendants posted no collateral, and Philadelphia Indemnity filed this action.

      **B.**    **Procedural Background**.

Count I of Philadelphia Indemnity's complaint (the only one of Philadelphia Indemnity's claims submitted to the jury) alleged that Defendants had breached the General Indemnity Agreement.  ECF No. 1, PageID # 10-12.  Defendants filed counterclaims.  ECF No. 37.  Counterclaim I (Breach of Contract), Counterclaim III (Misrepresentation), and Counterclaim VII (Fraud) were submitted to the jury, with Defendants voluntarily dismissing their remaining counterclaims.

On February 7, 2020, the jury returned a verdict.  As to Count I, the jury found that Defendants had breached the General Indemnity Agreement by failing to indemnify Philadelphia Indemnity for the costs incurred in investigating the State of Hawaii's claims against the bonds and by failing to post

collateral. ECF No. 229, PageID # 4664-65. The jury awarded Philadelphia Indemnity $20,260.93 in damages, the court having reserved for post-trial proceedings the issue of the amount of any collateral to be posted, which the parties agreed was an equitable remedy not subject to jury trial. *Id.* at 4665. The jury also found that Philadelphia Indemnity was not liable with respect to any of Defendants' counterclaims. *Id.* at 4666-68.

Both parties filed post-trial motions. Defendants moved for a new trial on the ground that this court had imposed unreasonable time limits during trial that prevented them from introducing important evidence. ECF No. 235. This court denied Defendants' motion. It ruled that the time limits it imposed were reasonable, that during trial Defendants had failed to identify specific evidence that they did not have time to introduce, and that Defendants themselves were responsible for any inability to introduce more evidence. ECF No. 260, PageID # 5924-5933.

Philadelphia Indemnity, for its part, filed a motion asking the court to order Defendants to specifically perform their contractual obligations by posting $685,515 in collateral. ECF No. 231, PageID # 4674. This court granted that motion. ECF No. 246. The court explained that a "'demand for collateral is reasonable if the sum demanded is commensurate with the claims made against [Philadelphia Indemnity],'" unless the claims were

4

frivolous. *Id.* at 5761-62 (quoting *Developers Sur. & Indem. Co. v. DKSL, LLC*, 2018 WL 1177918, at *6 (D. Haw. Mar. 6, 2018)). The State of Hawaii sought $1.3 million from Philadelphia Indemnity.[1] In light of that claim, Philadelphia Indemnity's estimate that it could suffer losses of up to $685,515 (the penal sum of the bonds) was not frivolous. *Id.* at 5761-5767. Accordingly, Philadelphia Indemnity was entitled to the requested amount of collateral.[2] *Id.* Defendants have now filed a second motion for a new trial challenging that decision.

### III.    LEGAL STANDARD.

Defendants move under Rule 59(a) of the Federal Rules

---

[1] In their second new trial motion, Defendants suggested for the first time that the correspondence Philadelphia Indemnity received from the State was not a "claim." *See, e.g.,* ECF No. 262, PageID # 5952. However, the evidence amply supports this court's finding that the State had made a claim against Philadelphia. Defendants acknowledge that State Deputy Attorney General Ann Horiuchi transmitted a letter to Philadelphia Indemnity that indicated that completing the contracts at issue would cost more than $1.3 million. Moreover, at trial Philadelphia's representatives testified that they were engaged in negotiations with the State over the amounts claimed in Horiuchi's letter. In light of the relationship between Philadelphia Indemnity and the State, Philadelphia Indemnity appropriately construed the letter as a preliminary claim against the bonds.

[2] Defendants repeatedly assert that the order directing them to post collateral was a remedy for the *quia timet* claim asserted in Count III of the complaint. *See, e.g.*, ECF No. 262, PageID # 5951; ECF No. 278, PageID # 6306. However, this court dismissed Count III as moot after it set a deadline by which Defendants were to post collateral as an equitable remedy relating to Defendants' breach of contract (Philadelphia Indemnity's Count I). ECF No. 246, PageID # 5767-69.

of Civil Procedure, which provides that a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Rule 59 does not expressly enumerate the grounds on which a motion for a new trial may be granted. *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). Rather, it says only that the court is "bound by those grounds that have been historically recognized." *Id.* Historically recognized grounds for a new trial include a verdict that is against the weight of the evidence, damages that are excessive, or a trial that was not fair to the moving party. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). Under Rule 59, a court may order a new trial only if, after weighing the evidence, the court concludes that "the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Id.* (quoting *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)).

As noted earlier, this is Defendants' second motion purporting to seek a new trial. The earlier motion sought a chance to redo what had been presented to the jury. The present motion seeks an evidentiary hearing on Philadelphia Indemnity's post-trial specific performance motion going to how much collateral needed to be posted. To the extent Defendants consider a trial to require an evidentiary hearing, there was no

trial on the amount of collateral, so the concept of a new trial on that issue appears anomalous. This court determined the collateral amount following receipt of briefs and a hearing consisting of arguments by counsel.

Certainly, had any party persuaded this court that an evidentiary hearing was needed to decide the collateral amount, that would have been handled just like a bench trial, given the parties' agreement that the setting of any collateral amount was a matter sounding in equity. But, having held no evidentiary hearing, this court wonders why Defendants say they are seeking "a new trial" on the amount of collateral. At the hearing on this motion, this court discussed with the attorneys the issue of whether Defendants might really be seeking "to alter or amend" the judgment under Rule 59(e).

"There are three basic grounds upon which a Rule 59(e) motion may be granted: 1) newly discovered or previously unavailable evidence; 2) a manifest error of law or fact upon which the judgment is based or manifest injustice; and 3) an intervening change in controlling law." *Lee v. Field*, 2016 WL 5934694, at *3 (D. Haw. Oct. 12, 2016). "Clear error occurs when 'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Id.* (quotation marks omitted). "Reconsideration of a judgment after its entry is an extraordinary remedy which should be used

sparingly." *Id.* (brackets and quotation marks omitted). The parties identified no prejudice to this court's proceeding as if the motion for "a new trial" were a Rule 59(e) motion.

**IV.     ANALYSIS.**

Defendants contend that the proceedings on Philadelphia Indemnity's specific performance claim were unfair because this court failed to hold an evidentiary hearing. *See* ECF No. 262, PageID # 5959. According to Defendants, that meant that they "were not afforded a sufficient opportunity to present their best defense." *Id.* Yet, in their opposition to Philadelphia Indemnity's motion for specific performance, Defendants made only a cursory request for an evidentiary hearing, providing no basis for their claim that an evidentiary hearing was necessary. Defendants' new trial motion introduces new arguments. Moreover, the evidence that Defendants now claim they should have been allowed to introduce would have been cumulative.

In their opposition to Philadelphia Indemnity's motion for specific performance, Defendants included only a single paragraph relating to a possible evidentiary hearing:

> In order to fully and fairly flesh out the issues raised herein, an evidentiary hearing will have to be held. Defendants were not permitted due to time constraints to introduce all of its [sic] evidence. *Defendants request enough time in which to enter the exhibits and explain the same that were mentioned in this memorandum.*

ECF No. 234, PageID # 5177 (emphasis added). Thus, Defendants'

only argument was that an evidentiary hearing was necessary "to enter the exhibits and explain the same that were mentioned in this memorandum." Nothing in the record suggested a need to hold an evidentiary hearing for that purpose. This court fully considered the evidence submitted by Defendants before granting Philadelphia Indemnity's specific performance motion.

Indeed, Defendants do not now attempt to show that this court erred by rejecting their earlier argument going to a need "to enter the exhibits and explain the same." Instead, Defendants now contend that they needed an evidentiary hearing to introduce other evidence that they say they did not have time to introduce during the trial itself. Defendants do not explain why they could not have identified this evidence[3] in their opposition to Philadelphia Indemnity's specific performance motion. Moreover, because Defendants did not make this argument earlier, they cannot obtain a new trial on this ground, assuming Defendants are proceeding under Rule 59(a). *See Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (explaining that, in ruling on a Rule 59(e) motion, "courts will not address new arguments or evidence that the moving party could have raised before the decision issued").

---

[3] To the extent Defendants contend that an evidentiary hearing was necessary so that this court could hear testimony from various witnesses, Defendants do not explain why they did not describe that testimony in their earlier opposition to Philadelphia Indemnity's specific performance motion.

In any event, the evidence Defendants now claim they should have been allowed to introduce would not have affected this court's earlier decision ordering specific performance. The legal standard set forth by the court in its decision on Philadelphia Indemnity's motion for specific performance is crucial here. Philadelphia Indemnity sought collateral to ensure that it would be indemnified against claims asserted by the State of Hawaii. In ruling on that request, this court explained that it did not have to decide the merits of the State's claims to order Defendants to post collateral. ECF No. 246, PageID # 5761-62. To the contrary, Philadelphia Indemnity was *entitled to collateral as long as the State's claims were not frivolous*. *Id.*

Under that standard, all of the evidence Defendants now seek to introduce would have been cumulative. In ruling on the specific performance motion, this court recognized that Defendants had argued that the State's claim against Philadelphia Indemnity was frivolous for three reasons: (1) when Ohana stopped working on the projects, it would have only cost the State $20,000 to complete the contracts; (2) the bills submitted by the contractor that replaced Ohana, Wasa Electric, were inflated; and (3) the State was asking Philadelphia Indemnity to pay for work outside the scope of the original contracts. *Id.* at 5762-64.

But it is hard to deem a claim frivolous if there is some evidence on both sides. And on all three issues, evidence

10

existed that would have permitted Philadelphia Indemnity to reasonably conclude that the State's claims were legitimate. Although Defendants claimed that the projects could have been easily completed, some evidence indicated that Ohana's work was faulty and needed to be redone.[4]  *Id.* at 5673.  Similarly, while Defendants claimed that Wasa's bills were inflated, Philadelphia Indemnity could have reasonably worried that it might have to pay all or much of what Wasa had billed, given the State's approval of Wasa's estimates, which arguably included the cost of redoing Ohana's work.[5]  *Id.* at 5764-65.  Finally, although this court recognized that Wasa's work went beyond the scope of the initial contracts, it explained that Philadelphia Indemnity could nevertheless have reasonably concluded that it might be liable for new work.  *Id.* at 5766.

Defendants now contend that they should have been allowed to present more evidence on their side of the scale.  The

---

[4]  Defendants maintain that this evidence was hearsay.  *See* ECF No. 262, PageID # 5961.  However, Defendants' own exhibits discussed the potential problems with Ohana's work.  *See* ECF No. 246, PageID # 5763.  Moreover, this court did not cite those exhibits to show that Ohana's work was defective.  Instead, it cited the exhibits to show that Philadelphia Indemnity could have *reasonably concluded* that the work was defective.

[5]  The State had limited incentive to let Wasa just run wild.  Although the State apparently claims that Philadelphia Indemnity is liable for all of Wasa's bills, the bonds signed by Philadelphia Indemnity limit its liability to just under $700,000.  The State had no guarantee that Philadelphia Indemnity would pay Wasa's bills for $1.3 million.

evidence they point to would arguably have provided further support for their assertions that (1) Ohana had substantially completed the contracts at issue, ECF No. 262, PageID # 5953, *see also* ECF No. 278, PageID # 6309; (2) Wasa Electric had overcharged the State, ECF No. 278, PageID # 6309; and (3) Wasa's work went beyond the scope of the original contracts.  ECF No. 262, PageID # 5953, *see also* ECF No. 278, PageID # 6310.  But none of that evidence would change this court's conclusion that, because there is some evidence going the other way, the State's claims cannot be said to have been frivolous.  Even if that evidence might be relevant in an action requiring a final decision on the merits of the State's claim, it would not have changed the outcome here.

Moreover, most of the witnesses Defendants now claim they would have called at an evidentiary hearing are the same witnesses that they cited in their first motion for a new trial.  This court discussed certain witnesses in detail in denying that motion:

> Of the six witnesses Defendants said they would have presented, two (Amir Borochov and James Ho) did testify at trial.  Defendants say they wanted to elicit further testimony from them, but it is not at all clear that Defendants could not have organized their direct examinations to ensure that all critical information was presented.
>
> Two of the six witnesses (Fu Xiang Wang and Song Lin Zhang) appear to be expert witnesses.  Because Defendants failed to

12

> adhere to discovery deadlines, this court
> precluded the introduction of certain expert
> testimony in its rulings on motions in limine
> and at trial. Defendants have not shown that
> these two witnesses would have been permitted
> to testify had time permitted.
>
> The two remaining witnesses (Dan Colton and
> Craig Kanai) that Defendants say they would
> have called appear to have been scheduled to
> provide testimony about how the construction
> contracts between Ohana and the State were
> handled. Defendants say that Colton, an
> Ohana employee, would have testified about
> "the progress of each project, what needed to
> be completed and his interactions with each
> project manager." There was considerable
> testimony about this subject during trial.
> To the extent Defendants wanted to justify
> their actions in handling the construction
> contracts and to critique the State's
> approach to their work, that is a matter that
> did not require more testimony. Similarly,
> Kanai's proposed testimony goes more to
> Ohana's dispute with the State than to
> Ohana's dispute with Philadelphia Indemnity
> that is the subject of this case. Kanai
> worked for Wasa Electric, the company that
> ended up working on the fire alarm projects
> after Ohana, citing a lack of payment by the
> State, declined to do more work until payment
> was made. Ohana contended at trial that the
> State hired Wasa Electric to do work beyond
> what Ohana had been hired to do, and that the
> State then unreasonably sought to recover
> from Ohana and/or Philadelphia Indemnity the
> costs of having Wasa Electric do that
> purportedly extra work. According to Ohana,
> Kanai would have testified about the scope of
> work to be done on the fire alarm systems and
> "the difference between the work he bid and
> the original contract work that Ohana bid and
> contracted for." This subject was
> sufficiently covered at trial.

ECF No. 260, PageID # 5929-31. That reasoning applies equally here. Even if Defendants had asked this court to hold an

evidentiary hearing on these grounds earlier, this court would have ruled that a hearing was not necessary.[6]

This court cannot discern either a miscarriage of justice warranting a new trial under Rule 59(a), or a manifest error of law or fact or manifest injustice warranting an alteration of or amendment to the judgment under Rule 59(e).

**V.    CONCLUSION.**

Defendants' second motion for a new trial is denied.

DATED: Honolulu, Hawaii, June 26, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Philadelphia Indemnity Insurance Co. v. Ohana Control Sys., Inc.*, Civ. No. 17-00435 SOM-RT; ORDER DENYING DEFENDANTS' SECOND MOTION FOR A NEW TRIAL

---

[6] At the hearing on this motion, the issue of whether the court's ruling was against the weight of the evidence was raised. Although Philadelphia Indemnity apparently believed that Defendants were raising this argument, Defendants, in their reply brief, explicitly stated that "the Second Motion for New Trial does not address itself to the weight of the evidence or the court's decision on the merits of the case[.]"  ECF No. 278, PageID # 6313.  Because Defendants have explicitly disclaimed reliance on that argument, this court does not address it further.